Honorable Randall K. Gaylord San Juan County Prosecuting Attorney P.O. Box 760 Friday Harbor, WA 98250
Dear Prosecutor Gaylord:
By letter previously acknowledged, you have requested our opinion on the following questions:
 1. Do the restrictions on the gifting of funds in article VIII, section 7 of the Washington Constitution prohibit San Juan County from using any real estate excise tax funds that may be collected pursuant to RCW 82.46.075 to make grants to aid persons or households with income in excess of 80 percent of the area median income?
 2. Do the restrictions on lending of credit in article VIII, section 7 of the Washington Constitution prohibit San Juan County from using real estate excise tax funds that may be collected pursuant to RCW 82.46.075 to make loans to aid persons or households with income in excess of 80 percent of the area median income?
 3. May a grant or loan program, pursuant to RCW 82.46.075, provide a preference for grants or loans to persons in public employment, such as teachers, county employees, firefighters, and paramedics?
 [original page 2] BRIEF ANSWER
1. No. The function of providing or assisting with affordable housing is a governmental function that does not violate article VIII, section 7 of the Washington Constitution. The eligibility standards proposed by the county are consistent with the statute and presumptively consistent with the limitations set forth in the constitution.
2. No. The Washington Supreme Court has stated that it will defer to the Legislature's determination of need, so long as that determination is reasonable and has previously found a housing assistance program that included aid to those of moderate income to be constitutional. The statute also contains adequate safeguards that retain public control over both the extent of risk to the taxpayers and effectuation of the program's public purpose.
3. Yes. The statute allows the county the ability to develop criteria for the award of grants and loans and, considering that revenues are unlikely to be sufficient for all of the county's affordable housing needs, the county will need to develop additional criteria that more specifically prioritize the use of the available funds. The county would need to make a showing that a preference for public employees is consistent with the purposes of the statute.
 ANALYSIS
In 2002, the Washington Legislature enacted RCW 82.46.075, which authorized counties to impose an additional real estate excise tax for development of affordable housing. The statute limits the use of the funds as follows:
 The proceeds of the tax shall be used exclusively for the development of affordable housing including acquisition, building, rehabilitation, and maintenance and operation of housing for very low, low, and moderate-income persons and those with special needs.
RCW 82.46.075(1). The statute also specifies the entities to whom grants or loans may be made:
 Eligible recipients of grants and loans from the account shall be private nonprofit, affordable housing providers, the housing authority for the county, or other housing programs conducted or funded by a public agency, or by a public agency in partnership with a private nonprofit entity.
RCW 82.46.075(2). Your questions are essentially whether the use of these tax proceeds to assist moderate income individuals or households is consistent with the limitations of article VIII, section 7 of the Washington Constitution, which limits the use of government funds in the support of individuals or private corporations:
 No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, [original page 3] association, company or corporation, except for the necessary support of the poor and infirm[.]
Const. art. VIII, § 7.
1. Do the restrictions on the gifting of funds inarticle VIII, section 7 of the Washington Constitution prohibit San JuanCounty from using any real estate excise tax funds that may becollected pursuant to RCW 82.46.075 to make grants to aid personsor households with income in excess of 80 percent of the areamedian income?
Your first question is whether the county's use of the affordable housing real estate excise tax to aid individuals or households of moderate income is a gift of public funds in violation of article VIII, section 7. We do not construe your questions to concern the constitutionality of RCW 82.46.075
itself. By longstanding policy, we decline to issue opinions on the constitutionality of duly enacted statutes and leave these issues for the courts to decide.[1] Rather, we understand your question to be whether, given the statutory framework of RCW82.46.075, the particular eligibility criteria proposed by the county (80 percent of the area median income) fall within the constitutional standards concerning gifts of public funds or lending of credit.
The Washington Supreme Court has set out a two-part analysis to determine whether an expenditure constitutes a gift of public funds:
 If the government expends funds to carry out a fundamental governmental purpose, no unconstitutional gift occurs. If the expenditures are pursuant to the government's proprietary authority, the court focuses on consideration and donative intent to determine if a gift has occurred.
Citizens for Clean Air v. City of Spokane, 114 Wn.2d 20, 39,785 P.2d 447 (1990) (citing City of Tacoma v. Taxpayers ofTacoma, 108 Wn.2d 679, 702, 743 P.2d 793 (1987); see also CLEANv. State, 130 Wn.2d 782, 797-98, 928 P.2d 1054 (1996). The first question we must address is whether the affordable housing tax program is a governmental function.[2]
The Washington Supreme Court considered a challenge under article VIII, section 5 with regard to a housing program inWashington State Housing Finance Commission v. O'Brien,100 Wn.2d 491, 671 P.2d 247 (1983). However, the issue in that case was whether the program was [original page 4] a lending of the state's credit and not whether it was a gift of public funds. The court did not determine whether assisting with affordable housing was a fundamental governmental purpose. Nor does any other Washington case discuss whether provision of affordable housing is governmental or proprietary. However, other states' courts have considered this question and concluded that in general, the work done by state and local housing authorities is governmental rather than proprietary. See, e.g., Evans v. Hous. Auth.,359 N.C. 50, 602 S.E.2d 668 (2004); Thompson v. City of CorsicanaHous. Auth., 57 S.W.3d 547, 559 (Tex.App. 2001) (housing authority performs governmental rather than proprietary functions).
The Washington Supreme Court has stated generally:
 The principal test in distinguishing governmental functions from proprietary functions is whether the act performed is for the common good of all, or whether it is for the special benefit or profit of the corporate entity.
Okeson v. City of Seattle, 150 Wn.2d 540, 550, 78 P.3d 1279
(2003). The language of the statute is clear regarding the purposes for which the tax revenues may be used. RCW82.46.075(1). Where the funds may be used "exclusively" only for the enumerated uses, the function cannot be said to be for the "special benefit or profit of the corporate entity." Conversely, functions such as the sale of electrical power have been found to be proprietary functions, as has the construction of a sports stadium. See City of Tacoma v. Taxpayers of Tacoma,108 Wn.2d 679, 703, 743 P.2d 793 (1987); CLEAN v. State, 130 Wn.2d 782,797-98, 928 P.2d 1054 (1997). By comparison, a housing assistance program for very low, low, and moderate income persons does not generate income for the city or county. The evident purpose of such a program is to assist people in meeting a basic human need — shelter — rather than to provide a service or product (such as garbage removal or drinking water).
The use of these tax funds for affordable housing is more analogous to use of public funds for entitlement payments. The Washington Supreme Court defined what constitutes an entitlement that does not violate article VIII, section 7 in City of Seattlev. State:
 Entitlements are a form of assistance provided to the public, or a segment of the public, as cash or services, in carrying out a program to further an overriding public purpose or satisfy a moral obligation. The overriding public purpose makes the private benefit incidental. Entitlements by their nature are equally available to anyone who qualifies under objective criteria.
City of Seattle v. State, 100 Wn.2d 232, 241, 668 P.2d 1266
(1983) (publicly funded campaign assistance was an entitlement and not a gift of public funds). The benefits provided under the affordable housing tax program are provided to a segment of the public that is very low, low, or moderate income, or has special needs, through assistance to public or nonprofit providers of affordable housing. They are equally available to those who qualify under either the "special needs" language or the statutory income criteria. The affordable housing tax program should therefore be considered to be a governmental function that is not violative of article VIII, section 7.
[original page 5] Having concluded that the courts would find the provision of housing to be a governmental and perhaps a "fundamental" governmental purpose, we consider the aspect of the county's proposed program that is not expressly covered by RCW82.46.075 — the inclusion of persons or households with income in excess of 80 percent of the area median income. We note initially that an income of 80 percent of the area median income appears to meet the definition of "moderate" income as set forth in RCW82.46.075, since more than half of all households enjoy a higher income. It is conceivable that the county could show that such an income is even "low" under appropriate circumstances. We note, further, that the court upheld broadly stated income standards (not including any specific number, as here) in FinanceCommission v. O'Brien, discussed more fully below. The county may wish to include findings in its ordinance showing why this number was chosen and why the county finds it to meet the criteria established in RCW 82.46.075.[3]
 2. Do the restrictions on lending of credit in article VIII,section 7 of the Washington Constitution prohibit San Juan Countyfrom using real estate excise tax funds that may be collectedpursuant to RCW 82.46.075 to make loans to aid persons orhouseholds with income in excess of 80 percent of the area medianincome?
Your second question is whether the use of the affordable housing tax proceeds for the benefit of those of moderate income violates the constitutional prohibition on lending of credit. Again, we do not analyze whether the statute itself is constitutional but note, again, that the county's proposed program appears consistent with the statute.
The Washington Supreme Court addressed the "lending of credit issue" in Finance Commission v. O'Brien. The Legislature authorized the Commission to issue nonrecourse tax exempt revenue bonds and use the bond proceeds to "invest in, purchase, or make commitments to purchase home mortgages to provide `decent, safe, sanitary, and affordable housing for eligible persons.'" Fin.Comm'n v. O'Brien, 100 Wn.2d at 493 (quoting Laws of 1983, ch. 161, § 5). The question before the court in Finance Commissionv. O'Brien was whether the Commission's issuance of these bonds violated article VIII, section 5 as an impermissible lending of the state's credit.[4]
The court first considered whether the statutory objective of the program was "to benefit a deserving class of the public."Fin. Comm'n v. O'Brien, 100 Wn.2d at 497. The court noted that "state aid to a circumscribed class of the public, in furtherance of legitimate state objectives, [original page 6] may provide the necessary `consideration' for the aid." Id. However, the court said that it would not take on the role of deciding who belonged to the benefited class, stating that it would defer to the Legislature's determination of what constituted need and would consider only the reasonableness of that determination.Id.
The legislation establishing the Commission included findings that persons of certain income levels could not afford adequate housing. These findings included the statement that "Older people, disabled persons, and low and moderate income families often cannot afford to rent decent housing." Id. at 496 n. 3 (quoting Laws of 1983, ch. 161, § 1) (emphasis added).
The Housing Finance Commission statute defined "eligible person" rather broadly, but it set criteria under which the Commission could determine eligibility:
 "Eligible person" means a person or family eligible in accordance with standards promulgated by the commission. Such persons shall include those persons whose income is insufficient to obtain at a reasonable cost, without financial assistance, decent, safe, and sanitary housing in the area in which the person or family resides, and may include such other persons whom the commission determines to be eligible.
RCW 43.180.020(5). Relying on the criteria in this definition and the legislative findings, the court concluded that there was a sufficient nexus between the recognized need and the persons to be benefited by the program, and the purpose of the program was to "benefit a class of citizens reasonably determined to require public aid to meet their housing needs, and not to benefit a specific private enterprise." Fin. Comm'n v. O'Brien,100 Wn.2d at 497-98. The court did not specifically address the inclusion of moderate income individuals as eligible participants, but it concluded generally that the program met the appropriate standard.
The real estate excise tax statute is less detailed and states only that the funds must be used for "development of affordable housing . . . for very low, low, and moderate income persons and those with special needs." RCW 82.46.075(1). However, there need only be a "reasonable nexus between the recognized need and the persons to be benefited." Fin. Comm'n v. O'Brien,100 Wn.2d at 498. The limitation of assistance to very low, low, and moderate income persons and those with special needs is likely a reasonable definition of "citizens reasonably determined to require public aid to meet their housing needs" and is comparable to the class of citizens benefited by the Housing Finance Commission program. Id.
In addition, the court considered whether there was adequate public control over the Housing Finance Commission program. The court noted that in the more recent cases involving the lending of public credit, the focus had been on the "risk that the state program posed to the public treasury or taxpayer." Id. at 494-95. In addition, the court also noted that the framers of the state constitution did not intend to "hinder state government from carrying out its essential function to secure the health and welfare of the state's citizens", nor to "insulate taxpayers from all risk and debt accruing from the public decisions of their governing representatives." Id. at 495.
 [original page 7] The difficulty underlying the lending of credit decisions is making the distinction between proper risk to the taxpayer from public decision making, and improper risk to taxpayers due to abdication of public control over the state's assets or status to private commercial decision making.
Id. The court concluded that this "risk of loss" approach requires it to determine whether the program in question "has safeguards absent in the schemes of the nineteenth century."Id., 100 Wn.2d at 495 (citation omitted). The court set out two safeguards that it considered central to the lending of credit clause: (1) The public must control "the use of the State conferred `asset' and the extent of its liability," and (2) the state must "retain the means to effectuate the project's public objective." Id.
The court concluded that because the Commission was using only funds generated from the sale of nonrecourse revenue bonds, it did not create any risk of loss of taxpayer funds. However, the court still considered whether there was sufficient public control over the program to insure that the public objectives of the program would be met. The court found that the following requirements provided that assurance: (1) The Commission's plan for using the bond proceeds was subject to public hearing; (2) the statute gave the Commission the authority to set standards and guidelines to be followed by private lenders participating in the program; and (3) the statute required that program proceeds be made available to lenders "in a fair and equitable manner."Id. at 499.
The affordable housing tax statute includes a number of similar requirements that provide for governmental control of the program expenditures and objectives. The county legislative authority is required to develop a plan for the expenditure of the tax proceeds, and it must hold at least one public hearing before adopting the plan. RCW 82.46.075(6). The county must also hold a public election on the program before it can be implemented. RCW82.46.075(4). In addition, the proceeds are required to be kept in a separate account by the county, and the use of the proceeds is limited to being used "exclusively for the development of affordable housing".
RCW 82.46.075(1). The tax proceeds cannot be used for any other purpose. Disbursements from this account may be made only to certain specific entities that are engaged in providing affordable housing. These are limited to private nonprofit affordable housing providers, the county housing authority, other housing programs that are conducted or funded by a public agency, and public agencies in partnership with nonprofit entities. RCW82.46.075(2). In addition, the county legislative authority must develop a competitive grant and loan selection process. RCW82.46.075(2). These requirements are similar in nature to those considered by the Washington Supreme Court in Finance Commissionv. O'Brien to be evidence of sufficient government control of the program. Thus, in our opinion, a program which is consistent with the statute would not likely be found to violate the prohibitions on "lending of credit" contained in the state constitution.
In summary, we conclude that the county is proposing a program that is broadly consistent with the statutory standards and, therefore, is likely to pass constitutional muster. We understand that the county has recently enacted a specific plan, but we have not reviewed its [original page 8[ details or attempted to analyze every possible argument concerning the proposal. That detailed analysis would fall to your office as the county's legal advisor.
3. May a grant or loan program pursuant to RCW 82.46.075provide a preference for grants or loans to persons in publicemployment, such as teachers, county employees, firefighters, andparamedics?
Your last question is whether the county may create a program under RCW 82.46.075 in which it gives a preference to programs that benefit those in certain types of employment, such as public safety employees or teachers.
The affordable housing tax program provides funding only to providers of affordable housing and not directly to renters or home buyers. Therefore, a preference would have to be expressed in the criteria for award of grants and loans and, ultimately, in the agreements with the affordable housing providers. RCW82.46.075 requires counties to develop criteria for the approval and funding of grant and loan applications. The range of ultimate recipients of the housing benefit is very broad — "very low, low, and moderate-income persons and those with special needs" — and likely encompasses a greater number of people than the county would be able to assist with this program. The county's authority to develop criteria for award of grants and loans should include the ability to set priorities for the types of housing programs that it will fund. Therefore, the county should have authority under RCW 82.46.075 to develop criteria for award of grants and loans that add additional criteria for who will ultimately benefit from the program, so long as those criteria are consistent with other applicable state and federal law.
Public employees as a category are not clearly "poor or infirm" and (to our knowledge at least) do not automatically fall into the lowest income levels. If the county wishes to justify a preference for public employees and their families, the county should be prepared to make findings showing why the preference would further the criteria set forth in RCW 82.46.075. Furthermore, we do not opine whether a preference for programs that benefit local government employees would be consistent with all other state and federal laws — only that such criteria would be allowed under the provisions of RCW 82.46.075 that require counties to develop criteria for award of grants and loans.
We trust that the foregoing will be useful to you.
ROB MCKENNA Attorney General
DEBORAH L. CADE Assistant Attorney General
:pmd
[1] If the constitutionality of RCW 82.46.075 were challenged, we would have the responsibility of defending it, so we proceed from the assumption that the statute itself is constitutional.
[2] Although this case uses the term "fundamental governmental purpose," neither it nor any of the other cases make a distinction between a "fundamental governmental purpose" and a "governmental purpose." Rather, the only distinction made is between governmental and proprietary purposes. We are satisfied that supplying housing to low and moderate income people serves a governmental purpose and is not a mere proprietary activity. The case law at least suggests that this would pass the constitutional standard, although we cannot predict it with certainty.
[3] For purposes of this discussion, we assume that the county will structure its housing program to make it consistent with the case law interpreting the constitution. For instance, the courts have held that a gratuitous transfer of public funds to a private corporation violates article VIII, section 7, even if the funds are used for a public purpose. Johns v. Wadsworth,80 Wash. 352, 141 P. 892 (1914). The later case law looks strongly to the presence or absence of consideration if a public entity is dealing with private parties. See, e.g., CLEAN v. City ofSpokane, 133 Wn.2d 455, 947 P.2d 1169 (1997), cert denied,525 U.S. 812 (1998); Taxpayers of Tacoma, 108 Wn.2d 679.
[4] Because the Housing Finance Commission is a state agency, the applicable constitutional provision is article VIII, section 5 rather than article VIII, section 7. However, Washington courts construe these two sections identically. See Taxpayers ofTacoma, 108 Wn.2d 679.